## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| DARLENE A. D'AREZZO, OLIVIA M. HOWARD, and JOELLE A. DEPEYROT, individually and on behalf of other similarly situated individuals,     Plaintiffs,<br><br>v.<br><br>THE PROVIDENCE CENTER, INC., alias,     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) | C. A. No. 15-120-M-LDA<br><br><br>Consolidated with |
| DARLENE A. D'AREZZO, STACEY L. SALYERS and JOSEPH K. REARDON, individually and on behalf of other similarly situated individuals,     Plaintiffs,<br><br>v.<br><br>FAMILY SERVICE OF RHODE ISLAND, INC., alias,     Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) | C. A. No. 15-121-M-LDA |

### MEMORANDUM & ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

This case is before the Court on Defendants' Motions to Dismiss the consolidated lawsuits brought by two sets of plaintiffs against their current and former employers, alleging violations of the Federal Labor Standards Act (FLSA) and the Rhode Island Minimum Wage Act (RIMWA). (ECF Nos. 12, 13). After reviewing the pleadings and the relevant substantive and procedural law, Defendants' Motions to Dismiss are GRANTED without prejudice.

## I.   PROCEDURAL BACKGROUND

Plaintiffs Darlene D'Arezzo, Olivia Howard, and Joelle Depeyrot brought suit individually and on behalf of all persons similarly situated in the State of Rhode Island against their employer, The Providence Center. C.A. 1:15-cv-00120-M-LDA.   On the same date, Ms. D'Arezzo and two others, Stacey Salyers and Joseph Reardon, brought a nearly identical lawsuit against their former employer, Family Service of Rhode Island, Inc.   C.A. 1:15-cv-00121-M-LDA. Both sets of plaintiffs claim violations of the FLSA and the RIMWA. (ECF No. 1 ¶¶ 2-3).[1]   Both Defendants moved to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (ECF Nos. 12, 13). Plaintiffs filed a single objection to both motions, (ECF No. 15), and Defendants filed separate replies. (ECF Nos. 16, 17).

## II.   FACTS ALLEGED IN THE COMPLAINTS

Plaintiffs are social services professionals who refer to themselves as "Fee-For-Service Therapists." (ECF No. 1 ¶ 19).   They allege that they are non-exempt employees under the FLSA and the RIMWA, or in the alternative, exempt employees whose rights were nonetheless violated. Id. ¶¶ 51-55.   They provide mental health, marriage and family therapy, and other counseling services to needy families and citizens across the state. Id. ¶¶ 5-7, 34. Defendants are two institutions that employed Plaintiffs. Id. ¶ 8.

Plaintiffs allege that they were "paid under a purported 'fee for service' arrangement as described [in the Complaint]." Id. ¶¶ 5-7, 19.   The Complaint describes the arrangement as "a

---

[1] ECF numbers are the same in both cases unless otherwise noted.

2

purported hybrid compensation plan typically consisting of flat rates for certain tasks and hourly rates for certain other services provided or work performed."[2] *Id.* ¶ 36.

The crux of Plaintiffs' complaint is that they were paid flat fees for recurring, time-specific jobs, but no fees for certain tasks related to those jobs — tasks that Defendants required them to do, regardless of how long they took to complete. For example, while Plaintiffs typically received $40 for each 45-minute therapy session, they received no compensation for various time-consuming tasks attendant to each session. *Id.* ¶ 37. Plaintiffs do not specify whether their employment contract with Defendants contemplated and encompassed these attendant tasks, or whether Defendants simply required Plaintiffs to complete these tasks in addition to their bargained-for duties.

Plaintiffs allege the following typical scenario: Because therapy sessions were sometimes located outside Defendants' facilities, Plaintiffs would have to travel to and from some sessions. *Id.* ¶ 45. When they arrived at the location of a session, they were required to wait at least 15 minutes for a client to show up. *Id.* ¶¶ 41, 46, 48. If the client did not show up, they had to complete certain follow up work pursuant to the Defendants' "no show" policies. *Id.* ¶ 46-49. This follow up work required Plaintiffs to "1) conduct a family outreach by phone, 2) complete and submit an encounter form, 3) draft, print, and mail the no-show client a letter, and/or 4) update the no-show client's progress notes and/or discharge paperwork."[3] *Id.* ¶ 42. Plaintiffs were not paid for any of these tasks because Defendants only permitted Plaintiffs to "report

---

[2] Plaintiffs' description of their compensation plan is difficult to decipher. The Court's best stab at what Plaintiffs mean by the word "hybrid," is that the plan can be described as either per job or per unit of time. In other words, because Plaintiffs were paid a flat fee for each time-specific task, such as $40 for a 45-minute therapy session, this arrangement can be characterized as either fee-for-service ($40 per session) or hourly pay ($40 per 45 minutes).

[3] Plaintiffs do not specify how long these tasks typically took.

hours/time for client appointments that were actually kept, and not for other work performed." *Id.* ¶ 49.

Relatedly, Plaintiffs were also required to do uncompensated work if a client canceled within 24 hours of a scheduled session. In those situations, Plaintiffs were "typically required" to "1) provide notice directly or indirectly to the 'canceled client'; 2) complete and submit an encounter form, and 3) update the progress notes." *Id.* ¶ 43. They were not compensated for these tasks or the time it took to complete them.

Plaintiffs also allege they were never compensated for "[t]ime spent obtaining insurance authorizations," and for

> [t]ime spent attending mandatory follow-up paperwork, and record keeping for clients, including but not limited to calling, emailing and writing letters to clients and others involved in the care or supervision of the clients, such as schools, hospitals, other psychotherapists, physicians, other social agencies, authorized family and clients' associates, [Rhode Island Department of Children, Youth & Families], and law enforcement as well as writing follow-up notes of such actions.

*Id.* ¶ 50.[4]

## III.   STANDARD OF REVIEW

At the motion to dismiss stage, the Court accepts as true all well-pleaded factual allegations in the complaint and makes all reasonable inferences therefrom in favor of the Plaintiffs. *Bergemann v. Rhode Island Dep't of Envtl. Mgmt.*, 665 F.3d 336, 339 (1st Cir. 2011) (citing *Dominion Energy Brayton Point, LLC v. Johnson*, 443 F.3d 12, 16 (1st Cir.2006)). The Federal Rules of Civil Procedure only require Plaintiffs to provide Defendants with "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

---

[4] In another part of the complaint, Plaintiffs admit they were paid for "certain associated documentation," but only if the client showed up for an appointment. *Id.* ¶ 44. It is unclear whether Plaintiffs were paid for all follow-up documentation or only the follow-up documentation they completed when the client did show up for an appointment.

8(a)(2). This requirement is satisfied when Plaintiffs include sufficient factual allegations in their complaint to nudge their claims "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Nonetheless, to stave off a motion to dismiss, Plaintiffs are also "required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988) (citing *Conley v. Gibson*, 355 U.S. 41, 45-48 (1957)).

## IV.   LEGAL ANALYSIS

Plaintiffs allege they were paid below the minimum wage in violation of FLSA provision 29 U.S.C. § 206 (2013).[5] "To state a valid FLSA claim, [P]laintiffs had to allege (1) that they were employed by [Defendants]; (2) that their work involved interstate activity; and (3) that they performed work for which they were under-compensated." *Pruell v. Caritas Christi*, 678 F.3d 10, 12 (1st Cir. 2012). Defendants challenge the sufficiency of the third element of Plaintiffs' claim.

To satisfy the third element, Plaintiffs must plead that they performed compensable work, for which they were compensated at a rate below the federal hourly minimum wage. Defendants argue that Plaintiffs failed this requirement, citing the so-called *Klinghoffer* rule. *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2d Cir. 1960) (holding that FLSA minimum wage claims are only viable when a covered employee's wages for a single *workweek* divided by hours worked dip below the federal minimum wage — hereinafter referred to as the "weekly measuring rod"). Plaintiffs do not allege in their complaints that the wages they earned in any given workweek divided by hours worked ever dipped below the minimum wage.

---

[5] Plaintiffs also allege a minimum wage violation under the parallel provision of the state statute — the RIMWA. R.I. Gen. Laws § 28-12-3 (2014).

Defendants also challenge whether Plaintiffs pleaded the alleged violations with sufficient factual specificity, and whether Plaintiffs have sufficiently asserted "willful" violations of the FLSA so that the statute of limitations can be extended from two years to three years under 29 U.S.C. § 255(a) (2013).

Plaintiffs urge the Court to reject the Second Circuit's *Klinghoffer* rule in favor of the "hourly measuring rod" adopted in 2011 by a First Circuit sister district court in *Norceide v. Cambridge Health Alliance*, 814 F.Supp.2d 17, 23, 25 (D. Mass 2011).[6] Under the Plaintiffs' theory, the employer must pay them at least a minimum wage for each hour worked, regardless of what their contract provides. Relying on *Norceide*, Plaintiffs claim that Defendants compensated Plaintiffs with a flat fee for time-specific *jobs*, but did not compensate Plaintiffs for the additional time they were required to spend on *tasks* attendant to those jobs. Plaintiffs do not state in their complaints whether their employment contracts with Defendants contemplated and included those attendant tasks.

After reviewing the relevant case law, the controlling statute, and the regulations interpreting that statute, the Court finds that the FLSA does not prescribe a single measuring rod for all covered employees, but rather instructs courts to look to the employment contract between the parties to determine whether the statute has been violated. Therefore, Plaintiffs could state a claim under a "contract measuring rod" theory when their employer requires them to put in additional work, not required by their contract, at a compensation rate below the minimum

---

[6] *See id.* ("[T]he *Klinghoffer* weekly average method ignores the plain language of the minimum wage provision and undermines the FLSA's primary purpose of ensuring a fair wage for workers. . . . Congress intended for the hour-by-hour method to be used for determining a minimum wage violation.")

wage.[7]   Plaintiffs could also state a claim under the "weekly measuring rod" theory when the wages they earn in a given workweek, divided by hours worked, dip below the minimum wage.[8] Because the current versions of Plaintiffs' complaints do not state a claim under either theory, the Court grants Defendants' motions to dismiss, but allows Plaintiffs leave to amend their complaints within 14 days.

A.   Background on Relevant Case Law

If *Klinghoffer* were a United States Supreme Court decision, Plaintiffs' federal minimum wage claims would be dismissed with a one-line order.  However, *Klinghoffer* was a Second Circuit panel's decision, and therefore this Court finds itself duty-bound to examine Plaintiffs' claims, and the FLSA provision authorizing it, in a more rigorous fashion.

The First Circuit has not adopted the *Klinghoffer* rule, which has led to some disagreement among the First Circuit sister district courts.  In a 2010 decision, the District of Massachusetts applied the *Klinghoffer* rule to grant a defendant's 12(b)(6) motion.  *Pruell v. Caritas Christi*, No. C.A. 09-11466-GAO, 2010 WL 3789318, at *3 (D. Mass. Sept. 27, 2010). On appeal, the First Circuit did not have the opportunity to address the *Klinghoffer* issue.[9]  *Pruell*

---

[7] The "contract measuring rod" ensures that employers do not leverage their unequal bargaining power to require current employees to work unpaid (or sub-minimum-paid) hours.

[8] The "weekly measuring rod" ensures that employers do not leverage their unequal bargaining power to require employees, who are not paid by the hour, to work at an effective hourly rate that is below the minimum wage.

[9] In their original complaint, the *Pruell* plaintiffs alleged FLSA minimum wage and overtime claims.  C.A. 09-11466-GAO.  The district court initially dismissed both claims; the minimum wage claim under the *Klinghoffer* rule and the overtime claim because plaintiffs did not allege that they worked over 40 hours per week.  *Pruell v. Caritas Christi*, C.A. 09-11466-GAO, 2010 WL 3789318, at *3 (D. Mass. Sept. 27, 2010).  The plaintiffs then filed an Amended Complaint, in which they dropped their minimum wage claim, but still asserted an FLSA overtime claim. *Compare* C.A. 09-11466-GAO, Compl. (ECF No. 1 ¶ 75) *with* Am. Compl. (ECF No. 33 ¶¶ 75-76); *see also* Pls.' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pls.' Am. Compl. (ECF No. 42 at 5-10).  In a subsequent bench order, the district court dismissed with prejudice Plaintiffs' Amended Complaint — which included the overtime claim, but no longer the minimum wage

*v. Caritas Christi*, 678 F.3d 10 (1st Cir. 2012). In 2011, a district judge in the District of Massachusetts forcefully and persuasively rejected the *Klinghoffer* rule in favor of the hourly measuring rod.[10] *Norceide*, 814 F.Supp.2d at 21-26. In 2014, that judge's decision was sustained at the summary judgment stage under the law of the case doctrine by a different district judge who had taken over the case after the original judge's retirement. *Norceide v. Cambridge Health Alliance*, No. C.A. 10-11729-NMG, 2014 WL 775453, at *4 (D. Mass. Feb. 24, 2014). However, in 2015, the District Court of New Hampshire cited to the *Klinghoffer* rule, without analysis of the underlying Act or *Norceide*, to dismiss a minimum wage claim. *Chesley v. DIRECTV, Inc.*, No. 14-CV-468-PB, 2015 WL 3549129, at *5 (D.N.H. June 8, 2015).

Of the thirteen federal circuits, eight have not taken a position on the *Klinghoffer* rule, while five have adopted it. 285 F.2d 487 (2d Cir. 1960); *Blankenship v. Thurston Motor Lines*, 415 F.2d 1193, 1198 (4th Cir. 1969); *U.S. Dep't of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 780 (6th Cir. 1995); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *Dove v. Coupe*, 759 F.2d 167, 171-72 (D.C. Cir. 1985). Among the *Klinghoffer* rule Circuits, all but the D.C. Circuit acquiesced to the rule without any independent analysis of the

claim — apparently for failure to make specific enough allegations of overtime work. The court then entered judgment for Defendants. *Id.*, J. in a Civil Case (ECF No. 91). Plaintiffs then appealed two issues to the First Circuit: whether it was proper for the district court to dismiss the overtime claim, and if so, whether it was proper to dismiss it with prejudice. *Pruell v. Caritas Christi*, 2011 WL 5517812 (C.A.1), 2 (Br. for Pls.-Appellants). The First Circuit upheld the dismissal, but reversed on the second issue, finding that the plaintiffs must be given an opportunity to refile the overtime claim. The only relevant takeaway from this procedural history for the instant case is that the First Circuit did not have the opportunity in *Pruell* to rule on the validity of the *Klinghoffer* rule, because that issue was not before the court.
[10] The hourly measuring rod adopted by the *Norceide* court is also followed by *Schmitt v. State of Kan.*, 844 F. Supp. 1449, 1456-59 (D. Kan. 1994) and some state courts under their state equivalents of the FLSA. *See, e.g., Gonzalez v. Downtown LA Motors, LP*, 215 Cal. App. 4th 36, 41 (2013), *reh'g denied* (Apr. 2, 2013), *review denied* (July 17, 2013); *Bot v. Residential Servs., Inc.*, No. C8-96-2545, 1997 WL 328029, at *6 (Minn. Ct. App. June 17, 1997).

8

FLSA. See *Norceide*, 814 F.Supp.2d at 22 (examining Circuit decisions adopting *Klinghoffer* rule). And while the D.C. Circuit conducted its own analysis, its decision was no doubt colored by *Klinghoffer*, which is quoted at length in the opinion. *Dove*, 759 F.2d at 171. Because of the large influence that the *Klinghoffer* decision has had on this area of law, this Court now turns to examining whether that case correctly reached the conclusion that the "weekly measuring rod" is the only permissible method of alleging minimum wage violations under the FLSA.

**B.   Klinghoffer Decision**

Upon a close examination of the *Klinghoffer* decision, this Court is convinced that the Second Circuit panel's holding was correct, but its dictum, which has become known as the *Klinghoffer* rule, was mistaken. Specifically, this Court finds that the *Klinghoffer* rule is dependent on principles of lenity unique to the criminal aspects of that case, and compromised by an incomplete, and seemingly results-driven assessment of legislative history.

*1. Lenity*

*Klinghoffer* was a criminal case that resulted in a jury verdict, finding violations of the minimum wage, overtime, and false records provisions of the FLSA by corporate and individual defendants.[11] 285 F.2d at 489. The violations arose when defendants, who were in dire financial straits, asked several of their security guards to work additional hours without pay. The "guards refused to accede to this, on the ground that it was tantamount to a cut in pay." *Id.* at 489-90. The defendants relented, contracting to pay the guards for approximately six overtime hours per week, with compensation forthcoming at a later date. *Id.* at 490. After putting in the overtime for less than four months, the guards stopped doing the extra work, because they had not yet been paid. *Id.* The guards did not report the extra hours they worked during this period on their

---

[11] The defendants in that case were the Klinghoffer Bros. Realty Corp., its president Albert Klingohffer, and vice-president Irving Jacobson. 285 F.2d at 489.

time cards. *Id.* After 17 months had passed from the last overtime hour worked by the guards, they finally submitted their hours to the defendants. *Id.* As soon as the guards officially submitted their hours, the defendants offered to pay them their due. All of the guards accepted this offer, except one, "who declined upon the advice of the district attorney." *Id.* The case was tried, and the jury convicted the defendants on all counts. The Second Circuit subsequently reversed the minimum wage and false records convictions, but affirmed the overtime conviction.

Much of the Second Circuit panel's opinion and its subsequent denial of motions for rehearing are permeated by suspicions of prosecutorial overzealousness. And that makes sense, because the FLSA prosecution appeared to have been completely unnecessary to secure the guards' unpaid wages — not only because the employer had offered to pay them, but also because the employer had so clearly violated the employment contract with the guards. The government's only purpose in bringing the minimum wage claim appeared to be punishing the defendants. In light of this, the *Klinghoffer* court earnestly admitted that it refused to adopt the government's endorsement of the "hourly measuring rod" in that specific criminal case because of the harshness of the result. *Id.* at 494. ("[T]he government's present position [requiring employers to compensate employees for every hour worked] should not be the interpretation given a *penal* statute.") (emphasis added).

These principles of lenity simply do not apply when employees are required to do unpaid work without compensation under the ever-present threat of losing their livelihood. The guards in *Klinghoffer* had sufficient bargaining power to refuse their boss's request to work extra hours at no extra pay, and instead negotiated for additional pay. When they were eventually not paid, they did not need recourse to the minimum wage provisions of the FLSA because their employer was ready to provide them with back pay. And if the employer had not been, the guards would

10

still have gotten paid because they had an unassailable contract law claim. Despite all this, the United States government wanted to punish the employer and charged it and its officers with a violation of the minimum wage provisions of the FLSA. It is a cruel twist of fate that the consequence of this prosecutorial decision is now routinely trotted out as the reason to deny relief to employees who, unlike the *Klinghoffer* guards, cannot refuse their employers' demands to put in unpaid hours that they are under no contractual obligation to work.

### 2. *Legislative history*

To justify its dictum[12] adopting the "weekly measuring rod," the Second Circuit turned to the FLSA's legislative history. Analyzing that history, the Court concluded that the sole purpose of the FLSA's minimum wage protections "was to guarantee a minimum livelihood to the employees covered by the Act" and asserted that "th[is] Congressional purpose is accomplished so long as the total weekly wage paid by an employer meets the minimum weekly requirement of the statute." 285 F.2d at 490 (citing Conference Report, H.R.Rep. No. 2738, 75th Cong., 3d Sess. 28 (1938); Sen.Rep. No. 884, 75th Cong., 1st Sess. 1-3 (1937); H.R.Rep. No. 1452, 75th Cong., 1st Sess. 8-9 (1937)). Thus, the *Klinghoffer* rule was born.

Upon review, this Court finds that *Klinghoffer*'s interpretation of the minimum wage protections is both overinclusive and underinclusive. The interpretation is overinclusive insofar as the Second Circuit asserts that the minimum wage provisions ensure covered employees a minimum livelihood. They do not, because not all covered employees work sufficient hours to earn a minimum livelihood. It is underinclusive insofar as the Second Circuit asserts that the

---

[12] *Klinghoffer* held that when employees work additional hours for additional pay, but the employer does not come up with the extra promised pay, the criminal sanctions of the FLSA's minimum wage provisions do not apply. To reach that holding, *Klinghoffer* adopted a much broader rule in its dictum, stating that the *only* way to allege a minimum wage claim is by the "weekly measuring rod." 285 F.2d at 490.

provisions do not protect employees except to ensure a minimum weekly living wage. They do, because even an employee who only does one hour of covered work per week, or per year, is protected.

While the Second Circuit's analysis of legislative history permitted it to reach the conclusion it sought, it does not reflect the actual scope of protections provided by FLSA's minimum wage provisions. Certainly, these protections help workers earn a living wage, but that is not their exact or principal purpose. "The principal congressional purpose in enacting the [FLSA] was to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Norceide*, 814 F.Supp.2d at 34 ((quoting *Barrentine v. Arkansas–Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981)) (citing 29 U.S.C. § 202(a))). The test of Congress' purpose was "whether a worker received 'a fair day's pay for a fair day's work.'" *Id.* (quoting *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 578 (1942) (quoting 81 Cong. Rec. 4983 (1937)) (Message of President Franklin D. Roosevelt)).[13] When an employee has fulfilled her contractual duties for the day, and is then required by her employer to do additional work at a compensation rate below the

---

[13] The D.C. Circuit, which is the only appellate court besides the Second Circuit to independently analyze the measuring rod of FLSA's minimum wage provisions, stated the purpose of those provisions even more starkly: "[t]he purpose of the minimum wage provisions 'is to protect certain groups of the population from sub-standard wages . . . due to . . . unequal bargaining power.'" *Dove*, 759 F.2d at 171 (citing *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 706 (1945)). When phrased that way, the situation faced by employees who do not have sufficient bargaining power to refuse an employer's demands to work uncompensated hours not contemplated by their employment contract is the exact problem the minimum wage laws were designed to correct. While *Dove* cited *Klinghoffer* to hold that the "weekly measuring rod" satisfies the provisions' purpose, both courts' conclusions suffer from the overinclusiveness and underinclusiveness discussed *supra*.

minimum wage, (or for no compensation at all), that employee has not received her "fair pay for [her] fair day's work." *Id.*

The *Klinghoffer* guards did not need minimum wage protections to receive their fair pay because they were protected by their employment contract. On the other hand, employees who are required by their employers to do unpaid work not contemplated by their employment contract, may need those protections. The Court now turns to the FLSA to determine whether it offers employees in that situation the protection of a minimum wage.

### C.   The Federal Statute

The relevant portion of the FLSA states:

(a)   Employees engaged in commerce . . .

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
> (1) except as otherwise provided in this section, not less than—
>   . . .
>> (C) $7.25 an hour, beginning 24 months after th[e] 60th day [after May 25, 2007];

29 U.S.C. § 206 (2013).

The Act does not specify a measuring rod for minimum wage violations.[14] This omission is not surprising, because each employee's compensation structure is different. When the Act was adopted in 1938, many covered employees were paid by the hour. Many others worked irregular hours for a fixed weekly wage. *See generally Overnight Motor Transp. Co. v. Missel*,

---

[14] Even courts who have adopted the *Klinghoffer* rule as a permissible interpretation of § 206 have conceded that the use of the word "workweek" in that provision does not mandate a "weekly measuring rod." *Dove*, 759 F.2d at n. 7 ("29 U.S.C. § 206(a) . . . employs the workweek to determine whether an employee falls within the scope of the federal minimum wage law. It does not . . . follow that, because the workweek is the standard for applicability, it must also be the standard for compliance.")

316 U.S. 572 (1942) (discussing application of FLSA to employees drawing a fixed weekly wage). Yet others were paid per task or per unit produced, similar to Plaintiffs in the case at bar. *See United States v. Rosenwasser*, 323 U.S. 360, 361-62 (1945) (discussing application of FLSA to such employees and listing entire industries where workers were generally paid per unit produced). It is beyond dispute that the minimum wage protections apply to all such covered employees, regardless of their method of compensation. 29 C.F.R. § 776.5 (2015).

The most natural explanation for why the FLSA does not provide a measuring rod for minimum wage violations is because a one-size-fits-all measuring rod would not make sense in light of the varied methods of compensation agreed to by covered employees. Instead, the courts must look to the employment contract between employer and employee to determine what the measuring rod is for any specific employee. This variable "contract measuring rod" reflects the variety of compensation arrangements agreed to by employers and employees, and best accounts for the lack of a prescribed measuring rod in the Act.[15] It is also most conducive to ensuring that each covered employee receives a "fair day's pay for a fair day's work." Message of President Franklin D. Roosevelt.

Turning next to the regulations interpreting the minimum wage provisions of the FLSA, the Court finds that they are consistent with a "contract measuring rod" for asserting violations.

---

[15] The Court recognizes that this "contract measuring rod" is not so much a measuring rod, as recognition that a measuring rod is not needed when an employee is required to do uncompensated work not included in her contract. The absence of a measuring rod in the FLSA is fully consistent with this theory of violation.

The "contract measuring rod" theory also reconciles the *Klinghoffer* line of cases with the "gap time" line of cases, insofar as "gap time" constitutes uncompensated work not required by an employee's contract. This Court finds that employees required to do such work can state a claim under the FLSA's minimum wage provision. *See Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1155-59 (10th Cir. 1992). *But see, e.g., Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d. Cir. 2013); *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 244 (3d Cir. 2014) (rejecting "gap time" claims).

**D.**   **The Regulations**

While the regulations do not directly address the measuring rod question, the relevant sections of the Code of Federal Regulations suggest that the proper place to look to determine the measuring rod is to the specific compensation structure governing the relationship between employer and employee.   The Court pays due heed to those regulations, to the extent they are controlling, permissible, and reasonable, or otherwise persuasive.   *See United States v. Mead Corp.*, 533 U.S. 218 (2001); *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Skidmore v. Swift*, 323 U.S. 143 (1944).

*1. Section 776.5*

This provision, which deals explicitly with an employer's minimum wage obligations to employees paid on a piecemeal basis, states:

> The Act's individual employee coverage is not limited to employees working on an hourly wage. The requirements of section 6 as to minimum wages are that "each" employee described therein shall be paid wages at a rate not less than a specified rate "an hour." This does not mean that employees cannot be paid on a piecework basis or on a salary, commission, or other basis; it merely means that whatever the basis on which the workers are paid, whether it be monthly, weekly, or on a piecework basis, they must receive at least the equivalent of the minimum hourly rate. "Each" and "any" employee obviously and necessarily includes one compensated by a unit of time, by the piece, or by any other measurement. Regulations prescribed by the Administrator (part 516 of this chapter) provide for the keeping of records in such form as to enable compensation on a piecework or other basis to be translated into an hourly rate.

29 C.F.R. § 776.5 (2015).

On its face, this regulation does not answer the question posed by this case, because "the equivalent of the minimum hourly wage" can be calculated by using either the weekly or the hourly measuring rod.   What is significant is that the regulation calls for evaluating the employer's records to determine that employer's obligations to the employee.   That suggests that the way a particular employer compensates a particular employee is relevant to the minimum

wage protections of the FLSA. If the *Klinghoffer* rule advocated by the Defendants were correct, this provision would have no reason to direct the courts to the employer's records to determine whether a minimum wage violation occurred — instead, it would say that a minimum wage violation only occurs if the total wages earned by an employee over a workweek divided by total hours worked equal less than the minimum hourly wage. It simply would not matter how the employee is actually compensated, all that would matter are the wages earned and the hours worked in a given workweek. Because the provision points to the employer's records, it necessarily contemplates a role for the specific compensation structure governing the employment relationship in determining whether a minimum wage violation occurred. In other words, the measuring rod for violations depends on the compensation method between employer and employee — a so-called "contract measuring rod."

### 2. Section 516

29 C.F.R. § 516 (2015), referenced in § 776.5, supports this interpretation. Specifically, § 516.6(a)(1) requires employers to maintain records of "the amounts of work accomplished by individual employees on a daily, weekly, or pay period basis (for example, units produced) when those amounts determine in whole or in part the pay period earnings or wages of those employees," and § 516.6(a)(2) requires employers to keep wage rate tables, "which provide the piece rates or other rates used in computing straight-time earnings, wages, or salary, or overtime pay computation." These provisions require employers to maintain records that correspond to the "pay period basis" of the employee. When read together with Section 776.5, the focus on the "pay period basis" agreed upon between employer and employee, in the context of minimum

wage computations, suggests a variable measuring rod that incorporates the contract between the two parties.[16]

Applied to the case at bar, Defendants would have to keep records of the "amounts of work" accomplished by the Plaintiffs on a "pay period basis," which is each discrete therapy session or job agreed upon in the employment contract. If the Plaintiffs had pled that Defendants required them to work outside of those discrete sessions without compensation, and that that additional work was not included in the initial employment contract, Plaintiffs would have stated a claim for a minimum wage violation.

### 3. *Section 776.4*

This section, which extends the protections of the FLSA to all employees who do any covered work during a given workweek, also explains some of the work done by the term "workweek" in Section 206 of the FLSA. The provision states:

(a) The workweek is to be taken as the standard in determining the applicability of the Act. Thus, if in any workweek an employee is engaged in both covered and noncovered work he is entitled to both the wage and hours benefits of the Act for all the time worked in that week, unless exempted therefrom by some specific provision of the Act. The proportion of his time spent by the employee in each type of work is not material. If he spends any part of the workweek in covered work he will be considered on exactly the same basis as if he had engaged exclusively in such work for the entire period. Accordingly, the total number of hours which he works during the workweek at both types of work must be compensated for in accordance with the minimum wage and overtime pay provisions of the Act.

(b) It is thus recognized that an employee may be subject to the Act in one workweek and not in the next. It is likewise true that some employees of an employer may be subject to the Act and others not. But the burden of effecting segregation between covered and noncovered work as between particular

---

[16] This section also references workweek calculations, but these calculations are related to the employer's overtime obligations. Specifically, 29 C.F.R. § 516.2(a)(5) (2015), which requires employers to maintain records containing the "[t]ime of day and day of week on which the employee's workweek begins" is immediately followed by § 516.2(a)(6) (2015), which explicitly connects the workweek with the employer's overtime obligations.

workweeks for a given employee or as between different groups of employees is upon the employer. Where covered work is being regularly or recurrently performed by his employees, and the employer seeks to segregate such work and thereby relieve himself of his obligations under sections 6 and 7 with respect to particular employees in particular workweeks, he should be prepared to show, and to demonstrate from his records, that such employees in those workweeks did not engage in any activities in interstate or foreign commerce or in the production of goods for such commerce, which would necessarily include a showing that such employees did not handle or work on goods or materials shipped in commerce or used in production of goods for commerce, or engage in any other work closely related and directly essential to production of goods for commerce. The Division's experience has indicated that much so-called "segregation" does not satisfy these tests and that many so-called "segregated" employees are in fact engaged in commerce or in the production of goods for commerce.

29 C.F.R. § 776.4 (2015) (internal footnotes omitted).

When read in its entirety, the meaning and purpose of this section is to extend the protections of the FLSA to all employees who engage in any covered work, and not to circumscribe employees' minimum wage claims. *See Dove*, 759 F.2d at n. 7 ("29 C.F.R. § 776.4 . . . . merely restates 29 U.S.C. § 206(a)"); *Norceide v. Cambridge Health Alliance*, 814 F.Supp.2d 17 at n. 6 (2011) ("[T]his regulation speaks simply to the 'applicability' of the FLSA, not how to determine hourly wage for purposes of the minimum wage.").

This section serves two functions: (a) it protects employees who engage in any covered work during the workweek by granting them full wage and hour protections for all time worked during that workweek; and (b) it puts the burden on the employer to prove that a particular employee is not covered by the protections of the Act during a particular workweek. It would be contrary to the protective tenor of this provision to read it in a way that limits minimum wage claims in the way Defendants would have them limited.

This section also explains some of the work done by the term "workweek" in Section 206 of the Act. The regulation explains that the term "workweek" is in the statute to deal with the potential problem that arises when an employee engages in both covered and uncovered work for

18

an employer. In those situations, the employer may seek to circumvent the protections of the minimum wage laws by paying the employee below minimum wage for the uncovered work. By looking to the "workweek" to assess minimum wage claims in those specific situations, the Act, as interpreted by 29 C.F.R. § 776.4, extends coverage to any employee who engages in any covered work during a given workweek. In other words, the term "workweek" serves to protect employees engaged in covered and uncovered work for the employer.[17]

Analogously, a "workweek measuring rod" is an effective way to protect employees who are not paid by the hour. By looking at the workweek for those employees, the court can have a large enough sample size to determine whether a particular employee's rights were actually violated. For example, if an employee contracts to make widgets at $1 per widget, it is not clear whether this contract violates the minimum wage provisions. If each widget only takes 30 seconds to make, then certainly not, but if each widget takes an hour, then yes, it does. For those situations, the FLSA can also be read to provide a "workweek measuring rod," so that courts will have a larger time sample to more accurately determine whether an employer has violated the wage law. *See* 29 C.F.R. § 776.4(a) (2015). But this "workweek measuring rod" does not obviate the need to also protect employees who are required by their employer to do additional unpaid work that is not encompassed by their employment contract. That is the role of the "contract measuring rod," which stands alongside the "weekly measuring rod" as an equally valid, necessary, and powerful pillar of minimum wage protection for all covered employees.

### 4. *Import of Regulations*

---

[17] *See Norceide*, 814 F.Supp.2d at n. 4 (citing An Act to Amend the FLSA, Pub. L. No. 87–30, § 6(a), 75 Stat. 65 (1961)) ("In 1961, Congress amended the minimum wage provision to include the phrase 'in any workweek' . . . . [A]s the Act's purpose statement makes explicit . . . the amendment was part of Congress' attempt 'to provide coverage for employees of large enterprises engaged in retail trade or service and of other employers engaged in commerce or in the production of goods for commerce.'")

The Code of Federal Regulations is consistent with this Court's finding that a "contract measuring rod" is the most natural reading of the minimum wage provisions of the FLSA.[18] While a few scattered Department of Labor opinion letters and manuals opt for a "weekly measuring rod," these documents are "not [entitled to] deference," and are not persuasive because "they do not engage with the FLSA's [central] purpose." *Norceide*, 814 F.Supp.2d at n. 6.

### E.   Contract Measuring Rod

The minimum wage provisions of the FLSA protect covered employees from entering employment contracts that pay below the minimum hourly wage. How does a court determine whether an employee entered into a contract that violates her or his rights? The answer is given in the question: By looking at the contract. There is no "measuring rod" prescribed by the FLSA

---

[18] The parties point to two other provisions of the C.F.R., neither of which turn out to be relevant to the issue presented by this case.

Plaintiffs point to 29 C.F.R. § 541.605 (2015), which explains how to calculate whether certain employees who are paid on a "fee basis" are paid a sufficiently high wage to meet the exemption threshold from the minimum wage (and overtime) provisions of the Act under Section 13(a)(1). Plaintiffs argue that this section bears on their minimum wage claims. It does not. It only answers the question of which employees are covered by the Act and which are exempt, and nothing else.

Defendants point to 29 C.F.R. § 778.112 (2015), which deals with overtime compensation. This provision explains how to calculate the base hourly wage of an employee who is paid by the day or by the job for the purpose of determining that employee's overtime wage. Defendants argue that this section bears on how minimum wage claims must be plead. It does not. It deals with a particular problem — how to calculate a rate of "one and one-half times the regular rate" at which an employee working over forty hours per week must be compensated for purposes of compliance with 29 U.S.C.A. § 207, when that employee is compensated per day or per job, rather than per hour.

It would be particularly unfair to use this provision to deny Plaintiffs' claims because the only reason this provision looks to the workweek is to determine an employee's fair overtime compensation. Otherwise, the FLSA could have mandated that each employee must simply be compensated at "one and one-half times" the minimum wage for all overtime worked. Defendants seek to use this provision, which uses the workweek to calculate a higher wage for overtime hours, to instead limit minimum wage claims by employees paid per job or per hour. That is not the purpose or the meaning of this provision.

because the contract is the measuring rod. Said differently, a court cannot tell whether an employer has contracted to pay the employee below the minimum wage in violation of the FLSA without looking at the parties' employment contract.

Employees can certainly contract to work for $7.25 per week, if they only work 60 minutes per week. And employees can contract to work piecemeal, doing $40 therapy sessions for an employer, so long as they are not required to do so much additional work attendant to each session, that their pay dips below the minimum wage. Only when it is not clear from the employment contract whether an employee will be paid below the minimum wage for the work performed, does the need for a "weekly measuring rod" arise. However, that "weekly measuring rod" is simply not applicable when an employment contract clearly pays an employee below the hourly minimum wage.

That is what happens when, for example, a part-time employee, who works 10 hours per week and is paid $10 per hour, is required by her employer to work an additional two hours at the end of her shift for no compensation. Some may quibble with the word "required" here, because certainly the employee "can always just say no." But the reality is that if an employee is faced with this situation, the employer's action is more than just a request — it comes with the implicit threat that "if you say no, I will find someone else who will say yes." This type of "unfair method of competition in commerce" is the exact problem that the wage provisions of the FLSA were designed to correct. 29 U.S.C. § 202 (2013).

Yet the *Klinghoffer* rule says that an employee in that situation does not have a claim. That must mean the *Klingohffer* rule is the wrong interpretation of the law. Because what is happening in the hypothetical above is that the employer is offering an employee a new contract — to work for two hours at $0 per hour — with the unspoken (and unenforceable) promise that

in exchange, the employee will get to keep her job for at least another day. That violates the wage provisions of the FLSA regardless of whatever else happened between employer and employee during the "workweek."

Analogously, if an employee has contracted to do therapy sessions for $45, but is then required to do additional covered work that the employment contract did not contemplate, that employee is being unlawfully asked to do work without compensation. If the contract contemplated that additional work, then no violation took place unless the hourly wage earned by that employee over a workweek dips below the minimum wage. In the first instance, it all depends on what the employee has contracted to do, because anything additional she is required to do, she does with no compensation and under the implicit threat of losing her job — which is prohibited by the FLSA.[19]

In sum, this Court agrees with the holding of *Klinghoffer*, but not with the *Klinghoffer* rule. The holding of *Klinghoffer* concerned a narrow situation: employees contracted to work extra hours for extra wages, but did not receive their extra compensation. In that situation, neither the employment contract nor the employer's actions violated the minimum wage laws — which represent a contract every employer enters with the U.S. Government; they only violated the specific contract between that employer and that employee.[20] But when an employer requires an employee to do additional work, not required by the employment contract, for compensation

---

[19] It would not help the employer to argue that asking the employee to do extra work is just a modification of the existing employment contract, because it would be a modification for consideration at below the minimum wage ($0), which is as prohibited by the FLSA as an initial employment contract for consideration below the minimum wage.

[20] It would have been a more expansive reading of the minimum wage provisions, had the *Klinghoffer* court said that any time an employer does not pay an employee, that not only violates the contract between them, but also federal law. Under that interpretation, the criminal provisions of the FLSA could lead to criminal sanctions for every bankrupt employer faced with insufficient funds to pay employees' wages.

that is below the minimum wage — that does violate the FLSA. To the extent that *Klinghoffer* rejected this proposition in its dicta, it was mistaken.

After reviewing the language of the Act, the regulations interpreting it, and always heeding the maxim that the remedial provisions of the FLSA are to be given a liberal interpretation, *see, e.g.,* 29 C.F.R. § 790.2 (2015) (citing *Roland Elec. Co. v. Walling,* 326 U.S. 657 (1946); *United States v. Rosenwasser,* 323 U.S. 360 (1945); *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697 (1945); and *A.H. Phillips, Inc. v. Walling,* 324 U.S. 490 (1945)), this Court rejects the *Klinghoffer* rule in favor of a more nuanced minimum wage measuring rod that looks to the compensation structure between employer and employee to determine whether a violation occurred. In other words, this Court follows an intermediate course between the mandatory "weekly measuring rod" *only* position espoused by the *Klinghoffer* rule and the strict "hourly measuring rod" position adopted by *Norceide,* by permitting minimum wage claims under the "contract measuring rod" theory.

### F.   The State Statute

Plaintiffs also allege a state claim under the RIMWA, parallel to the federal claim. The relevant portion of the RIMWA, the state minimum wage provision, states:

> (a) Every employer shall pay to each of his or her employees: commencing July 1, 1999, at least the minimum wage of five dollars and sixty-five cents ($5.65) per hour. Commencing September 1, 2000, the minimum wage is six dollars and fifteen cents ($6.15) per hour.
> (b) Commencing January 1, 2004, the minimum wage is six dollars and seventy-five cents ($6.75) per hour.
> (c) Commencing March 1, 2006, the minimum wage is seven dollars and ten cents ($7.10) per hour.
> (d) Commencing January 1, 2007, the minimum wage is seven dollars and forty cents ($7.40) per hour.
> (e) Commencing January 1, 2013, the minimum wage is seven dollars and seventy-five cents ($7.75) per hour.
> (f) Commencing January 1, 2014, the minimum wage is eight dollars ($8.00) per hour.

23

(g) Commencing January 1, 2015, the minimum wage is nine dollars ($9.00) per hour.
(h) Commencing January 1, 2016, the minimum wage is nine dollars and sixty cents ($9.60) per hour.

R.I. Gen. Laws § 28-12-3 (2015).

Like its federal counterpart, the state statute does not prescribe a measuring rod for minimum wage violations. No state court decision or regulation explicitly adopts a minimum wage measuring rod. Because Rhode Island law governing minimum wage is similar to the federal law, this Court finds that Plaintiffs can also allege a RIMWA claim under the "contract measuring rod" theory. *Cf. Harbor Cruises LLC v. R.I. Dep't of Labor*, 2008 R.I. Super. LEXIS 142, *8 (R.I. Super. Ct. 2008) (highlighting similarity of FLSA and RIMWA in overtime context).

### G.   Plaintiffs' Claims

Plaintiffs have not stated a federal or state minimum wage claim under the "weekly measuring rod" because they have not claimed that the wages they earned in any given workweek, divided by hours worked, ever dipped below the minimum wage. Moreover, Plaintiffs have not stated a claim under the "contract measuring rod" because they have not claimed that the additional work their employers required them to perform was not bargained for in their employment contract.[21] Therefore, Plaintiffs have failed to state a claim for a minimum wage violation.

---

[21] Plaintiffs hint at such a claim when they state that "they were required to perform tasks and/or otherwise perform work for which they were not compensated." ECF No. 1 ¶ 18. However, to state a claim under the "contract measuring rod" theory, Plaintiffs must explicitly and plausibly claim that the covered work they performed was not required by their employment contract. Plaintiffs do not make this claim in the current versions of their complaints, but the Court is giving them leave to allege it in amended complaints.

24

Plaintiffs are granted leave to file amended complaints that state a minimum wage claim under either the "weekly" or "contract measuring rod" theory within 14 days from the issuance of this order.

## IV.    CONCLUSION

For the reasons stated above, the Defendants' Motions to Dismiss the Complaints (ECF Nos. 14, 15) are GRANTED without prejudice.[22]

IT IS SO ORDERED:

_____
John J. McConnell, Jr.
United States District Judge

October 30, 2015

---

[22] The Court need not consider whether Plaintiffs have stated a claim for a willful violation in light of the dismissal.